1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

JUL 2 1 2009

Stephan Harris, Clerk
Cheyenne

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

Philip Andrew; Wolf,
   Complainant,

   vs.

ANTHON STOUFER, JOSH
ROMNEY, and BRET F. KING,
   DEFENDANTS.

) No. $09-CV-170-D$
) VERIFIED CRIMINAL COMPLAINT
) under 18 USC § 4 Misprision of felony.
)
)
) Violations of 18 USC § 3, 4, 241, and 1341.
)
)
)
)

## I. INTRODUCTION & PARTIES.

1.1 COMES NOW, Complainant above named, seeking to report crime as required by 18 USC § 4. The claims of the Plaintiff are patently unfounded, and with knowledge of such Plaintiff's counsel has chosen to join in the Plaintiff's attempt to extort from the Defendant sums not owed.

1.2 Inasmuch as this Court's Judge Alan B. Johnson has all necessary information to recognize and understand the conduct complained of herein to be overtly criminal in nature and has failed to act, he shall be considered a hostile witness for the purposes of this criminal complaint.

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.   Page 1 of 6

Philip Andrew; Wolf
P.O. Box 16804
Golden, CO 80402

1          1.3 Defendants ANTHON STOUFER and JOSH ROMNEY (hereinafter "STOUFER"

2  and "ROMNEY") are principals or representatives of Beaver Creek Land & Cattle, LLC, which

3  is a plaintiff in the civil action in this Court. (See #08-CV-202-J).

4          1.4 Defendant BRET F. KING (hereinafter "KING") is counsel in the subject civil

action brought without cause, having as his address P.O. Box 40, Jackson, WY 83001.

5          1.5 Defendants and each of them know that the subject contract in controversy does not

6  operate to allow for the remedy sought through the subject civil action, and that said action

7  therefore constitutes a breach of said contract.

8          1.6 FURTHER, Defendants and each of them know that STOUFER and ROMNEY

9  were in breach of the subject contract (**Ex.A** hereto) which states that:

10          "§ 2.2 Earnest Money Deposit. Concurrent with the full execution of this Agreement,

11          Buyer shall deposit with Title Company the sum of Zero Dollars ($00.00) (the "Earnest
            Money"). Title Company shall hold the Earnest Money, in escrow, to be applied against

12          the Purchase Price at Closing. *If buyer fails to close its purchase of the Property on or
            before the Closing Date*, the Earnest Money shall be released to Seller, Which Seller

13          may retain in addition to any and all other remedies available to Seller in law or equity."

14          1.7 Defendants STOUFER and ROMNEY were never in a position to accept or demand

15  payment regarding the subject property, for they've never acquired any equity of any nature in

16  said property. The subject civil action is clearly brought because the Complainant did not pay

17  to these Defendants what he clearly did not owe. Indeed, such failure to become the actual

owner of the subject property on these Defendants' part is a breach in and of itself.

18

19          "**Recitals**: B. Seller desires to sell, and Buyer desires to purchase, the Property, subject
          to the terms and conditions of this Agreement.

20            NOW, THEREFORE, in consideration of the mutual covenants set forth below

21          in this Agreement, and other good and valuable considerations, Seller and Buyer agree
          as follows[.]"

22

23          "§ 4.1.4 Seller *is the owner of the property or will be the Owner of the Property* on or
          before the Closing."

24          "§ 8.1 Governing law. The laws of the State of Wyoming shall govern the validity,

25          enforcement, and interpretation of this Agreement, unless otherwise specified herein."

26          1.8 Defendants have chosen to ignore this restriction agreed upon, one requiring

"enforcement" to take place, if necessary, under "governing" Wyoming state law. Defendants

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.        Page 2 of 6        Philip Andrew, Wolf
                                            P.O. Box 16804
                                            Golden, CO 80402

1   STOUFER and ROMNEY acknowledge that "enforcement" includes a suit concerning
2   perceived breach. (See Ex.B hereto at its ¶16, "[O]r may sue Seller to specifically enforce this
3   Contract[.]"). The subject civil action or suit seeks to "enforce" the subject contract which
4   expressly limits remedy to Wyoming state law.

5   1.9 FURTHER, having stated no basis or standing of any kind to justify or authorize a
6   demand of money or other property from the Complainant, the subject civil action constitutes
    mere evidence of attempted extortion and nothing more.

## II. VIOLATIONS OF FEDERAL CRIMINAL STATUTES.

9   2.1 All exhibits, facts, and writings filed herewith shall be deemed to be incorporated by
10  this reference into each count alleged below as if fully restated therein. All acts complained of
11  herein were willfully and intentionally committed by the Defendants with full knowledge of
    law to the contrary.

12  2.2 All persons similarly situated to above named Defendants shall be deemed to have
13  been personally named under applicable allegations made herein.

## COUNT I:

18 U.S.C. § 876 Mailing threatening communications.
16  (d) *Whoever, with intent to extort from any person any money or other thing of*
17  *value, knowingly so deposits or causes to be delivered, as aforesaid, any*
    *communication, with or without a name or designating mark subscribed thereto,*
18  *addressed to any other person and containing any threat to injure the property or*
    *reputation of the addressee or of another,* or the reputation of a deceased person, *or*
19  *any threat to accuse the addressee or any other person of a crime,* shall be fined under
    this title or imprisoned not more than two years, or both. If such a communication is
20  addressed to a United States judge, a Federal law enforcement officer, or an official
    who is covered by section 1114, the individual shall be fined under this title, imprisoned
21  not more than 10 years, or both.

22  2.3 Defendants and each of them have, with the intent to extort sums from the
23  Complainant which he does not owe, deposited or caused to be deposited into U.S. Post threats
24  to Complainant's property and future rights to property. (See Defendants' certificates of service
25  in this case). By their use of the mails to extort money from the Complainant which he does not
26  owe, Defendants and each of them are in violation of 18 USC § 876(d) Mailing threatening
    communications.

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.                    Page 3 of 6

Philip Andrew; Wolf
P.O. Box 16804
Golden, CO 80402

1

2

### COUNT II:

3

18 U.S.C. § 1341 Frauds and swindles.-

*Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises*, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, *for the purpose of executing such scheme or artiflce or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service*, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

4

5

6

7

8

9

10

11

12

13   2.4 Defendants and each of them have attempted through an artifice to defraud, to

14   obtain the property of the Complainant by means of false representations and fraudulent

15   pretenses to this Court, with full knowledge that contractual terms governing the subject

16   transaction for the purchase of land. The Defendants chose to commence the fraudulent and

17   false civil action in this Court. The Defendants are therefore in violation of 18 USC § 1341

Frauds and swindles.

18

19   ### COUNT III:

20   18 U.S.C. § 241 Conspiracy against rights. *If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State*, Territory, Commonwealth,

21   Possession, or District *in the free exercise or enjoyment of any right or privilege secured to him by the Constitution* or laws of the United States, or because of his

22   having so exercised the same; or

23   *If two or more persons go* in disguise on the highway, or *on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right* or

24   privilege so secured -

*They shall be fined under this title or imprisoned not more than ten years, or*

25   *both*; and *if death results from the acts committed in violation of this section or if such acts include kidnapping or an attempt to kidnap,* aggravated sexual abuse or an

26   attempt to commit aggravated sexual abuse, or an attempt to kill, *they shall be fined*

1    ***under this title or imprisoned for any term of years or for life***, or both, or ***may be***
     ***sentenced to death***.
2

3    2.5 Defendants hereto have conspired to deprive the Complainant of vast sums of

4    money which he does not owe. Such an injury to the Complainant in his enjoyment of his

     property therefore constitutes a violation of 18 USC § 241 Conspiracy against rights.
5

6                                    **COUNT IV and V:**

7    18 U.S.C. § 3 Accessory after the fact.- ***Whoever, knowing that an offense against the***
     ***United States has been committed, receives, relieves, comforts or assists the offender***
8    in order to hinder or prevent his apprehension, trial or punishment, ***is an accessory after***
     ***the fact***.
9           Except as otherwise expressly provided by any Act of Congress, ***an accessory***
10   ***after the fact shall be imprisoned not more than one-half the maximum term of***
     ***imprisonment*** or (notwithstanding section 3571) fined not more than one-half the
11   maximum fine prescribed for the punishment of the principal, or both; or if the principal
     is punishable by life imprisonment or death, the accessory shall be imprisoned not more
12   than 15 years.

13   18 U.S.C. § 4 Misprision of felony. ***Whoever, having knowledge of the actual***
14   ***commission of a felony cognizable by a court of the United States, conceals and does***
     ***not as soon as possible make known*** the same to some judge or other person in civil or
15   military authority under the United States, ***shall be fined under this title or imprisoned***
     ***not more than three years, or both***.
16

17   2.6 Defendant KING has heightened knowledge of the law and has read the subject

18   contract now in controversy, and understands the scheme of Defendants STOUFER and

     ROMNEY to be wholly unfounded and therefore criminal in nature as described *supra*. Despite
19   such knowledge Defendant KING chose to join the scheme rather than report it to authorities as

20   required by 18 USC § 4. This conduct on the part of KING is therefore in violation of 18 USC

21   § 3 Accessory after the fact.

22   2.7 Defendant KING saw the subject scheme as a violation of federal felony statutes but

23   chose to keep such knowledge to himself, and he did not make the same known to some judge,

     or civil or military authority, in violation of 18 USC § 4 Misprision of felony.
24

25                           III. CONCLUSION & VERIFICATION.

26   3.1 Defendants STOUFER and ROMNEY have brought the subject civil action because

     the Complainant did not give them money for property they never acquired, as agreed. (See

COMPLAINT under 18 U.S.C.
§ 4 Misprision of felony.              Page 5 of 6

1   **Ex.A** at its § 4.1.4). Defendant KING possesses full knowledge of this and has chosen to

2   participate, lending aid to known felons.

3       3.2 I, Philip Andrew; Wolf, Complainant hereto, **do believe** and do hereby declare

4   under penalties of perjury (28 USC § 1746) that the foregoing accounting of facts are true and

correct to the best of my knowledge, and that Defendants' conduct as complained of constitutes

5   the crimes of which I have accused them herein. Executed this 15th day of July, 2009.

6

7       Signed: _____

8           Philip Andrew; Wolf, Complainant

      3.3 The above affirmation was SUBSCRIBED and duly SWORN to before me this

9   16th day of July, 2009, by Philip Andrew; Wolf.

10       3.4 I, _____Tina M. White_____, am a Notary under license from the State of

11   Colorado whose Commission expires _1-2-2011_, and be it known by my hand and my Seal

12   as follows: Tina M. White

13   _____

14       Notary signature

15

16

17   Dated: 7/15/2009    My Commission Expires 01/02/2011 Presented by:

18   _____

19           Philip Andrew; Wolf
          P.O. Box 16804
          Golden, CO 80402

20   ///

21   ///

22   ///

23   ///

    ///

24   ///

25   ///

26   ///

    ///

# Exhibit A:

**Ex.A**. The contract now in controversy between Plaintiff and Defendant,
Philip Andrew; Wolf.

Exhibit: _A_

## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT ("**Agreement**") is made as of May 20, 2008 (the "**Effective Date**"), by and between Phillip A. Wolf ("**Buyer**"), and Beaver Creek Land & Cattle, LLC ("**Seller**"). Buyer and Seller are sometimes referred to herein as the "parties" or, individually, as a "party."

### RECITALS:

A.    Seller owns or will own certain real property located in Hot Springs County, Wyoming and commonly known as the Lost Peaks Ranch, which is more particularly described on Exhibit A attached hereto (the "**Property**"). The Property includes all water and mineral rights that Seller acquired in its purchase of the Property that are appurtenant to the Property.

B.    Seller desires to sell, and Buyer desires to purchase, the Property, subject to the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the mutual covenants set forth below in this Agreement, and other good and valuable consideration, Seller and Buyer agree as follows:

### AGREEMENT:

### ARTICLE I

1.1    Defined Terms. Capitalized terms used in this Agreement have the meaning given to them in this Agreement.

1.2    Purchase and Sale. Upon the terms and conditions stated below, Seller hereby agrees to sell and convey the Property to Buyer, and Buyer hereby agrees to purchase the Property from Seller and to pay the Purchase Price to Seller.

### ARTICLE II

2.1    Purchase Price. The purchase price for the Property shall be Seventy Five Million Dollars ($75,000,000.00) (the "**Purchase Price**"). Buyer shall pay the Purchase Price, less the amount of the Earnest Money Deposit, to Seller in cash at Closing. Buyer shall pay purchase price to Seller via Treasury Account to escrow for closing.

2.2    Earnest Money Deposit. Concurrent with the full execution of this Agreement, Buyer shall deposit with Title Company the sum of Zero Dollars ($00.00) (the "**Earnest Money**"). Title Company shall hold the Earnest Money, in escrow, to be applied against the Purchase Price at Closing. If Buyer fails to close its purchase of the Property on or before the Closing Date, the Earnest Money shall be released to Seller, which Seller may retain in addition to any and all other remedies available to Seller in law or equity.

### ARTICLE III

## ARTICLE III

3.1     Title Insurance. At the Closing, Seller shall cause a ALTA standard Owner's Policy of Title Insurance (the "Title Policy") for the Property to be furnished to Buyer. Seller shall pay the title insurance premium for the Title Policy. Buyer shall have the right to obtain extended coverage for the Title Policy by paying that portion of the title insurance premium required to obtain any extended coverage.

## ARTICLE IV

4.1     Seller's Representations & Warranties. Seller represents and warrants to Buyer that the following statements are true and shall be true on the Closing Date:

4.1.1     Seller possesses all requisite power and authority to enter into this Agreement and to perform its obligations according to the terms and conditions of this Agreement.

4.1.2     The execution of this Agreement or any instrument or document required by this Agreement, and the consummation of the transaction contemplated by this Agreement will not violate any order, ruling, certificate or license, regulation or demand of any court or regulatory agency to which Seller or the Property is subject or any agreement to which Seller is a party.

4.1.3     This Agreement, when duly executed by Seller, shall constitute a valid, legal and binding obligation of Seller, and shall be enforceable.

4.1.4     Seller is the owner of the Property or shall be the Owner of the Property on or before the Closing.

## ARTICLE V

5.1     Buyer's Representations & Warranties. Buyer represents and warrants to Seller that the following statements are true and shall be true on the Closing Date:

5.1.1     The execution of this Agreement or any instrument or document required by this Agreement, and the consummation of the transaction contemplated by this Agreement will not violate any order, ruling, certificate or license, regulation or demand of any court, regulatory agency or other tribunal to which Buyer is subject or to any agreement to which Buyer is a party. The consummation will be through a treasury account as outlined in section 2.1.

5.1.2     This Agreement, when duly executed by Buyer, shall constitute a valid, legal and binding obligation of Buyer, and shall be enforceable.

## ARTICLE VI

6.1     Date and Place of Closing. The closing of the transactions described in this Agreement (the "Closing") shall take place on a date determined by Seller on or before June 30,

2

As



27 May 2008 3:48PM    WOLFINTERSTATE                    72U⌐                    p.3

2008 (the "**Closing Date**") in the offices of title company selected by Seller (the "**Title Company**"), or such other location as Buyer and Seller shall designate.

6.2     Items to be delivered at the Closing.

6.2.1     Seller. On or before the Closing Date, Seller shall deliver to Title Company each of the following items, to be delivered to Buyer at the Closing:

6.2.1.1     A Special Warranty Deed in the statutory form (the "**Deed**");

6.2.1.2     A bill of sale for the "cow camp," range improvements and other personal property and equipment to be transferred at the Closing; and

6.2.1.3     All additional documents and instruments which are reasonably necessary to the consummation of this transaction.

6.2.2     Buyer. On or before the Closing Date, Buyer shall deliver to Title Company each of the following items:

6.2.2.1     Valid funds in the full amount of the Purchase Price, less the Earnest Money Deposit, plus Buyer's share of Closing costs and prorations, as provided below; and,

6.2.2.2     All additional documents and instruments which are reasonably necessary to the consummation of this transaction.

6.3     Closing Prorations. Ad valorem and similar taxes and assessments relating to the Property shall be prorated between Seller and Buyer as of the Closing Date, based upon the best available estimates of the amount of taxes that will be due and payable on the Property during the calendar year of the Closing. All other expenses of the Property and any rental income shall also be prorated as of the Closing Date. The provisions of this section shall survive the Closing and delivery of the Deed.

6.4     Closing Costs. All escrow and Closing fees charged by Title Company shall be divided equally between, and paid by, Buyer and Seller. Buyer shall pay all recording fees. Seller shall pay the premium for the Title Policy. Buyer and Seller shall each pay for the cost of their own legal counsel and other advisors in connection with this transaction.

## ARTICLE VII

7.1     No Brokers; Indemnity. Seller and Buyer represent and warrant to each other that neither has contacted any real estate broker, finder, or other party in connection with this transaction, to whom any real estate brokerage, finder, or other fees may be due or payable with respect to the transaction contemplated hereby. The provisions of this section shall survive the Closing and delivery of the Deed.

7.2     Post Closing Covenants. Buyer hereby acknowledges and agrees that (I) a former owner of the Property has the right to continue to graze cattle on the deeded portions of the Property from and after the Closing until October 15, 2008, subject to a lease that Seller shall assign to Buyer,



3

at Closing, (ii) such former owner may remain in possession of the "Mill Iron" location home on the Property until September 1, 2008, (iii) the former owner's agent "John" may continue to occupy the home he occupies as of the Effective Date until October 15, 2008, (iv) such former owner shall be entitled to hunting rights for 1 elk and 2 deer for the 2008 season, and ... The provisions of this section shall survive the Closing and delivery of the Deed.

## ARTICLE VIII

8.1   Governing Law.   The laws of the State of Wyoming shall govern the validity, enforcement, and interpretation of this Agreement, unless otherwise specified herein.

8.2   Entirety and Amendments.   This Agreement embodies the entire agreement between the parties and supersedes any prior agreements and understandings, if any, relating to the Property, and may be amended only by written instrument executed by Seller and Buyer.

8.3   Multiple Counterparts.   This Agreement may be executed in a number of identical counterparts. Each of such counterparts is to be deemed an original for all purposes, and all such counterparts shall, collectively, constitute one agreement.

8.4   Parties Bound.   This Agreement shall be binding upon and inure to the benefit of Seller and Buyer, and their respective heirs, successors and assigns.

8.5   Further Acts.   In addition to the acts and deeds recited herein and contemplated to be performed, executed, and delivered by Seller and Buyer, Seller and Buyer agree to perform, execute, and deliver or cause to be performed, executed, and delivered at the Closing or after the Closing any and all such further acts, deeds, and assurances as may be necessary to consummate the transactions contemplated hereby. Buyer may record a memorandum of this Agreement against the Property.

EXECUTED as of the Effective Date.

SELLER:

Beaver Creek Land & Cattle, LLC

By: _____

Its: Manager

BUYER:

Phillip A. Wolf
PO Box 18904
Golden, CO 80402

_____
Phillip A. Wolf

4

## EXHIBIT "A"

### (Property Description)

EXHIBIT "A"

The land referred to in this Commitment is situated in the State of Wyoming, County of Hot Springs, and is described as follows:

**PARCEL 1:**

**TOWNSHIP 7 NORTH, RANGE 1 WEST, WRM, HOT SPRINGS COUNTY, WYOMING**

SECTION 2: W½ OF LOT 2, ALL OF LOTS 3 AND 4, W½SW¼NE¼, S½NW¼

SECTION 3: LOTS 1, 2, 3 AND 4, S½N½

SECTION 4: LOTS 1, 2, 3 AND 4, S½N½

SECTION 5: LOTS 1, 2, 3 AND 4, S½N½

**TOWNSHIP 8 NORTH, RANGE 1 EAST, WRM, HOT SPRINGS COUNTY, WYOMING**

SECTION 1: LOTS 1, 2, 3 AND 5, S½NE¼, SE¼NW¼, N½S½, N½S½S½

SECTION 2: LOT 2

**TOWNSHIP 8 NORTH, RANGE 1 WEST, WRM, HOT SPRINGS COUNTY, WYOMING**

SECTION 15: LOT 2

SECTION 20: LOT 1

SECTION 21: LOTS 1, 2, 3, 4 AND 5, NE¼SE¼, S½SE¼, SE¼SW¼

SECTION 22: ALL

SECTION 23: S½NW¼, S½

SECTION 26: ALL

SECTION 27: ALL

SECTION 28: ALL

SECTION 29: LOTS 1, 2 AND 3, NE¼NE¼, S½NE¼, SE¼, E½SW¼, SW¼SW¼

SECTION 32: ALL

SECTION 33: ALL

SECTION 34: ALL

SECTION 35: W½, NE¼, W½W½SE¼

**TOWNSHIP 8 NORTH, RANGE 2 EAST, WRM, HOT SPRINGS COUNTY, WYOMING**

SECTION 3: LOT 4

SECTION 4: LOTS 1, 2, 3 AND 4, S½N½, S½

SECTION 5: LOTS 1, 2, 3 AND 4, S½N½, S½

SECTION 6: LOTS 1, 2, 3, 4, 5, 6 AND 8, S½NE¼, SE¼NW¼, NE¼SW¼, N½SE¼, SE¼SE¼

**TOWNSHIP 9 NORTH, RANGE 1 EAST, WRM, HOT SPRINGS COUNTY, WYOMING**

SECTION 35: LOT 1

**TOWNSHIP 9 NORTH, RANGE 2 EAST, WRM, HOT SPRINGS COUNTY, WYOMING**

SECTION 31: LOTS 4 AND 5 EXCEPTING THAT PORTION OF LOT 5 CONVEYED TO THE COUNTY OF HOT SPRINGS IN BOOK 28 OF DEEDS, PAGE 35 RECORDED OCTOBER 16, 1945, S½SE¼

SECTION 32: LOTS 1, 2, 3 AND 4, S½S½

SECTION 33: LOTS 1, 2, 3 AND 4, SE¼SW¼, SW¼SE¼, SW¼SW¼

(Continued next page)

A3

## ADDENDUM A

## PURCHASE AND SALE AGREEMENT

### Dated May 20, 2008

This Addendum is an integral part of the Purchase and Sale Agreement ("the Agreement") dated May 20, 2008 between Beaver Creek Land & Cattle, LLC (Seller) and Phillip A. Wolf (Buyer) concerning the Property described in the Agreement. Capitalized terms used, but not defined herein shall have the meaning given them in the Agreement. All the terms and conditions of this Addendum are hereby incorporated by reference into and made a part of the Agreement.

1. Buyer is accessing treasury account for $75,000,000 and will pay Seller a total of $62,500,000 for the Property. The difference of $12,500,000 will not be paid to Seller, but will be held in escrow and returned to Buyer for additional property consolidations and configurations pertaining to the ranch. Seller agrees to assist Buyer in acquiring additional properties for BLM land swaps.

2. Seller will convey to Buyer all mineral rights Seller possesses on the Property including, without limitation, Bentonite, gravel, rock and construction grade minerals.

3. Closing of escrow will occur at Uinta Title & Insurance of Evanston, WY.

EXECUTED as of the Effective Date.

SELLER:

Beaver Creek Land & Cattle, LLC

By: _____

Its: Manager

BUYER:

Phillip A. Wolf
PO Box 16804
Golden, CO 80402

_____
Phillip A. Wolf

12

# Exhibit B:

**Ex.B.** Plaintiff's contract with the owner of the subject property.

Exhibit: _B_

# REAL ESTATE PURCHASE CONTRACT – LAND
Dated March 24, 2008

This is an offer to purchase by Beaver Creek Land & Cattle, LLC or assigns, hereinafter referred to as "Buyer", from the seller of record, H. Frank & Karen Robbins, hereinafter referred to as "Seller", of the property commonly known as the HD High Island Ranch, hereinafter referred to as "the Property", which is approximately 76,268 deeded acres located in Hot Springs County, WY. A proper legal description is to be attached hereto by Seller as Exhibit A.

Details of the offer to purchase are as follows:

1. PROPERTY: The specifics of the property described above relating to this sale are:

   1.1 Specific items included in this sale are: All improvements thereon, easements and other appurtenances and all fixtures of a permanent nature currently on the premises except as hereinafter provided, in their present condition, ordinary wear and tear excepted, and including all personal property described herein (herein after "Property").

   1.2 Water Rights/Water Shares. This offer to purchase is to include any and all water rights and/or shares associated with this parcel. Seller shall disclose water rights and/or shares as outlined in 7(e) below.
   ~~1.3 Mineral Rights. This offer to purchase is to include all mineral rights associated with this parcel. Seller shall disclose mineral rights as outlined in 7(f) below.~~

   1.4 Leases. This offer to purchase is to include all State and Federal leases and grazing rights as presently constituted.
                                                      # 50,000,000   *JR*

2. PURCHASE PRICE: The purchase price for the Property is ~~$46,000,000~~, ~~based on a~~   *FR* ~~purchase price of $603 per acre. The purchase price shall be adjusted based on the total acreage having insurable title.~~ The purchase price will be paid as follows:

   $50,000———————(a) Earnest Money Deposit. Under certain conditions described in this Contract THIS DEPOSIT MAY BECOME TOTALLY NON-REFUNDABLE. This Earnest Money Deposit will be deposited with Uinta Title & Insurance , Inc of Evanston, WY (a First American Title Insurance affiliate) thru wire transfer within three (3) business days of acceptance of this offer to purchase.

   $None————————(b) New Loan. Buyer agrees to apply for one or more of the following loans:
                    [ ] Conventional [ ]Other (specify)
                    If the loan is to include any particular terms, then check below and give details:[   ] Specific Loan Terms _____ _____

   *JR*  $None————————(c) Seller Financing.
   *FR*  $None————————(d) Other (specify)
         ~~$10,950,000~~———(e) Balance of Purchase Price in Cash at Settlement.
         # 50,000,000
         ~~$46,000,000~~          TOTAL PURCHASE PRICE. Total of lines (a) through (c)

3. SETTLEMENT AND CLOSING: Settlement shall take place on the Settlement Deadline referenced in Section 24(c), or on a date upon which Buyer and Seller agree in writing. "Settlement" shall occur only when all of the following have been completed: (a) Buyer and Seller have signed and delivered to each other or to the escrow/closing office all documents required by this Contract, by the Lender, by written escrow instructions or by applicable law; (b) any monies required to be paid by Buyer under these documents (except for the proceeds of any new loan) have been delivered by Buyer to Seller or to the escrow/closing office in the form of collected or cleared funds; and (c) any monies required to be paid by Seller under these

                                                                    *KR FR*

Buyers Initials (*JR*)                    1 of 11                    Sellers Initials(_  _)

documents have been delivered by Seller to Buyer or to the escrow/closing office in the form of collected or cleared funds. Seller and Buyer shall each pay one half (1/2) of the fee charged by the escrow/closing office for its services in the settlement/closing process. Taxes and assessments for the current year, rents, and interest on assumed obligations shall be prorated at Settlement as set forth in this Section. Prorations set forth in this Section shall be made as of the Settlement Deadline date referenced in Section 24(c), unless otherwise agreed to in writing by the parties. Such writing could include the settlement statement. The transaction will be considered closed when Settlement has been completed, and when all of the following have been completed: (i) the proceeds of any new loan have been delivered by the Lender to Seller or to the escrow/closing office; and (ii) the applicable Closing documents have been recorded in the office of the county recorder. The actions described in parts (i) and (ii) of the preceding sentence shall be completed within four calendar days of Settlement.

4. POSSESSION: Seller shall deliver physical possession to Buyer: [xx]Upon Closing
[ ]Other (specify) _____ ___ ___ _____ .. _____ . . . _____

5. AGENCY DISCLOSURE:

(a) The parties warrant to one another that they have not dealt with any finder, broker or realtor in connection with this Agreement other than Ruralands Real Estate.

(b) If any person shall assert a claim to a finder's fee or brokerage commission on account of alleged employment as a finder or broker in connection with this Agreement other than Ruralands Real Estate, the Party under whom the finder or broker is claiming shall indemnify and hold the other Party harmless from and against any such claim and all costs, expenses and liabilities incurred in connection with such claim or any action or proceeding brought on such claim, including but not limited to, counsel and witness fees and court costs in defending against such claim. The provisions of this subjection shall survive cancellation of this Agreement or Closing of Escrow.

(c) Seller shall be responsible for payment of a commission to Ruralands Real Estate pursuant to separate written agreements, which commissions shall be paid at Closing of Escrow.

6. TITLE INSURANCE: At Settlement, Seller agrees to pay for a standard coverage owner's policy of title insurance insuring Buyer in the amount of the Purchase Price. Seller agrees to use First American Title Insurance in Casper, WY for the title search and insurance. Any additional title insurance coverage shall be at Buyer's expense.

7. SELLER DISCLOSURES: No later than the Seller Disclosure Deadline referenced in Section 24(a), Seller shall provide to Buyer the following documents, which are collectively referred to as the "Seller Disclosures":
(a) a Seller property condition disclosure for the Property, signed and dated by Seller;
(b) a commitment for the policy of title insurance;
(c) a copy of any leases or easements affecting the Property not expiring prior to Closing;
(d) written notice of any claims and/or conditions known to Seller relating to environmental problems;
(e) evidence of any water rights and/or water shares referenced in Section 1.2 above; and
(f) evidence of any mineral rights associated with the sale of the property; and
(g) Other (specify)

8. BUYER'S RIGHT TO CANCEL BASED ON BUYER'S DUE DILIGENCE: Buyer's obligation to purchase under this Contract (check applicable boxes):
(a) [xx] IS [ ]IS NOT conditioned upon Buyer's approval of the content of all the Seller Disclosures referenced in Section 7;
(b) [xx] IS [ ] IS NOT conditioned upon Buyer's approval of any independent investigation and approval in their sole and absolute discretion of the following conditions relating to the

KR FR

Buyers Initials (JK)                    2 of 11                    Sellers Initials(_ _)

property, including, but not limited to: zoning, access, easements, well depths, septic and sanitation restrictions, surveys or other means of establishing the corners and boundaries, special improvement districts, restrictions affecting use, special building requirements, future assessments, utility hookup and installation costs, environmental hazards or anything else Buyer deems appropriate.

(c) [xx] IS [ ] IS NOT conditioned upon Buyer's approval of applicable federal, state and local governmental laws, ordinances and regulations affecting the Property; and any applicable deed restrictions and/or CC&R's (covenants, conditions and restrictions) affecting the Property;

(d) [ ] IS [xx] IS NOT conditioned upon the Property appraising for not less than the Purchase Price;

(e) [ ] IS [xx] IS NOT conditioned upon Buyer's approval of the terms and conditions of any mortgage financing referenced in Section 2 above:

If any of items 8(a) through 8(e) are checked in the affirmative, then Sections 8.1, 8.2, 8.3 and 8.4 apply; otherwise, they do not apply. The items checked in the affirmative above are collectively referred to as Buyer's "Due Diligence." Unless otherwise provided in this Contract, Buyer's Due Diligence shall be paid for by Buyer and shall be conducted by individuals or entities of Buyer's choice. Seller agrees to cooperate with Buyer's Due Diligence and with a final preclosing inspection under Section 11.

8.1 Due Diligence Deadline. No later than the Due Diligence Deadline referenced in Section 24(b) Buyer shall: (a) complete all of Buyer's Due Diligence; and (b) determine if the results of Buyer's Due Diligence are acceptable to Buyer.

8.2 Right to Cancel or Object. If Buyer determines that the results of Buyer's Due Diligence are unacceptable, Buyer may, no later than the Due Diligence Deadline, either: (a) cancel this Contract by providing written notice to Seller, whereupon the Earnest Money Deposit shall be released to Buyer; or (b) provide Seller with written notice of objections.

8.3 Failure to Respond. If by the expiration of the Due Diligence Deadline, Buyer does not: (a) cancel this Contract as provided in Section 8.2; or (b) deliver a written objection to Seller regarding the Buyer's Due Diligence, The Buyer's Due Diligence shall be deemed approved by Buyer; and the contingencies referenced in Sections 8(a) through 8(g), including but not limited to, any financing contingency, shall be deemed waived by Buyer.

8.4 Response by Seller. If Buyer provides written objections to Seller, Buyer and Seller shall have seven (7) calendar days after Seller's receipt of Buyer's objections (the "Response Period") in which to agree in writing upon the manner of resolving Buyer's objections. Except as provided in Section 10.2, Seller may, but shall not be required to, resolve Buyer's objections. If Buyer and Seller have not agreed in writing upon the manner of resolving Buyer's objections, Buyer may cancel this Contract by providing written notice to Seller no later than three (3) calendar days after expiration of the Response Period; whereupon the Earnest Money Deposit shall be released to Buyer. If this Contract is not canceled by Buyer under this Section 8.4, Buyer's objections shall be deemed waived by Buyer. This waiver shall not affect those items warranted in Section 10.

9. **ADDITIONAL TERMS:** There [xx] ARE [ ] ARE NOT addenda to this Contract containing additional terms. If there are, the terms of the following addenda are incorporated into this Contract by this reference: [xx] Addenda No.'s 1 [ ] Seller Financing Addendum [ ] Other (specify):

10. **SELLER WARRANTIES AND REPRESENTATIONS:**

10.1 Condition of Title. Seller represents that Seller has fee title to the Property and will convey good and marketable title to Buyer at Closing by general warranty deed. Buyer agrees, however, to accept title to the Property subject to the following matters of record: easements, deed restrictions, CC&R's (meaning covenants, conditions and restrictions), and rights-of-way; and subject to the contents of the Commitment for Title Insurance as agreed to by Buyer under Section 8. Buyer also agrees to take the Property subject to existing leases affecting the Property

Buyers Initials (JR)                    3 of 11                    Sellers Initials( KR )( )

and not expiring prior to Closing, Buyer agrees to be responsible for taxes, assessments, homeowners association dues, utilities, and other services provided to the Property after Closing. Seller will cause to be paid off by Closing all mortgages, trust deeds, judgments, mechanic's liens, tax liens and warrants. Seller will cause to be paid current by Closing all assessments and homeowners association dues.

10.2 **Condition of Property.** Seller warrants that the Property will be in the following condition ON THE DATE SELLER DELIVERS PHYSICAL POSSESSION TO BUYER:
  (a) the Property shall he free of debris and personal property;
  (b) the Property will be in the same general condition as it was on the date of Acceptance.

11. **FINAL PRE—CLOSING INSPECTION:** Before Settlement, Buyer may, upon reasonable notice and at a reasonable time, conduct a final pre-closing inspection of the Property to determine only that the Property is "as represented", meaning that the Property has been repaired/corrected as agreed to in Section 8.4, and is in the condition warranted in Section 10.2. If the Property is not as represented, Seller will, prior to Settlement, repair/correct the Property, and place the Property in the warranted condition or with the consent of Buyer (and Lender if applicable), escrow an amount at Settlement sufficient to provide for the same. The failure to conduct a final pre-closing inspection or to claim that the Property is not as represented, shall not constitute a waiver by Buyer of the right to receive, on the date of possession, the Property as represented.

12. **CHANGES DURING TRANSACTION:** Seller agrees that from the date of Acceptance until the date of Closing, none of the following shall occur without the prior written consent of Buyer (a) no changes in any existing leases shall be made; (b) no new leases shall be entered into; (c) no substantial alterations or improvements to the Property shall be made or undertaken; and (d) no further financial encumbrances affecting the Property shall be made.

13. **AUTHORITY OF SIGNERS:** If Buyer or Seller is a corporation, partnership, trust, estate, limited liability company or other entity, the person executing this Contract on its behalf warrants his or her authority to do so and to bind Buyer and Seller.

14. **COMPLETE CONTRACT:** This Contract together with its addenda, any attached exhibits, and Seller Disclosures, constitutes the entire Contract between the parties and supersedes and replaces any and all prior negotiations, representations, warranties, understandings or contracts between the parties. This Contract cannot be changed except by written agreement of the parties.

15. **DISPUTE RESOLUTION:** The parties agree that any dispute, arising prior to or after Closing, related to this Contract (check applicable box) [  ] SHALL  [xx] MAY AT THE OPTION OF THE PARTIES first be submitted to mediation. If the parties agree to mediation, the dispute shall be submitted to mediation through a mediation provider mutually agreed upon by the parties. Each party agrees to bear its own costs of mediation. If mediation fails, the other procedures and remedies available under this Contract shall apply. Nothing in this Section 15 shall prohibit any party from seeking emergency equitable relief pending mediation.

16. **DEFAULT:** If Buyer defaults, Seller may retain the Earnest Money Deposit as its sole remedy to cover liquidated damages. If Seller defaults, in addition to return of the Earnest Money Deposit, Buyer may elect either to accept from Seller a sum equal to the Earnest Money Deposit as liquidated damages, or may sue Seller to specifically enforce this Contract or pursue other remedies available at law. If Buyer elects to accept liquidated damages, Seller agrees to pay the liquidated damages to Buyer upon demand.

17. **ATTORNEY FEES AND COSTS:** In the event of litigation or binding arbitration to enforce this Contract, the prevailing party shall be entitled to costs and reasonable attorney fees. However, attorney fees shall not be awarded for participation in mediation under Section 15.

Buyers Initials ( JK )                    4 of 11            Sellers Initials( ___ )    KR FR

18. NOTICES: Except as provided in Section 23, all notices required under this Contract must be: (a) in writing; (b) signed by the party giving notice; and (c) received by the other party or the other party's agent no later than the applicable date referenced in this Contract.

19. ABROGATION: Except for the provisions of Sections 10.1, 10.2, 15, 17 and 25 and express warranties made in this Contract, the provisions of this Contract shall not apply after Closing.

20. RISK OF LOSS: All risk of loss to the Property, including physical damage or destruction to the Property or its improvements due to any cause except ordinary wear and tear and loss caused by a taking in eminent domain, shall be borne by Seller until the transaction is closed.

21. TIME IS OF THE ESSENCE: Time is of the essence regarding the dates set forth in this Contract. Extensions must be agreed to in writing by all parties. Unless otherwise explicitly stated in this Contract (a) performance under each Section of this Contract which references a date shall absolutely be required by 5:00 PM Mountain Time on the stated date; and (b) the term "days" shall mean calendar days and shall be counted beginning on the day following the event which triggers the timing requirement (i.e., Acceptance, etc.). Performance dates and times referenced herein shall not be binding upon title companies, lenders, appraisers and others not parties to this Contract, except as otherwise agreed to in writing by such non-party.

22. FAX TRANSMISSION AND COUNTERPARTS: Facsimile (fax) transmission of a signed copy of this Contract, any addenda and counteroffers, and the retransmission of any signed fax shall be the same as delivery of an original. This Contract and any addenda and counteroffers may be executed in counterparts.

23. ACCEPTANCE: "Acceptance" occurs when Seller or Buyer, responding to an offer or counteroffer of the other: (a) signs the offer or counteroffer where noted to indicate acceptance; and (b) communicates to the other party or to the other party's agent that the offer or counteroffer has been signed as required.

24. CONTRACT DEADLINES: Buyer and Seller agree that the following deadlines shall apply to this Contract:

(a) Seller Disclosure Deadline:       14 days from acceptance of this Agreement

(b) Due Diligence Deadline            May 20, 2008

(c) Settlement Deadline               May 30, 2008

25. 1031 Exchange: Seller understands and agrees that Buyer may acquire title to the Property in compliance with the provisions of Section 1031 (a)(Tax Deferred Exchange) of the Internal Revenue Code. In the event Buyer elects to use the Property as the replacement Property, the Final Purchase and Sale Agreement shall provide for Seller to cooperate by signing all documents necessary to complete the exchange contemplated by the Buyer.

Not withstanding any provisions in the Final Purchase and Sale Agreement, it is the overriding intent of Buyer to receive the Property as part of an I.R.C. § 1031 Tax Deferred like kind transaction if Buyer elects to use the Property as its replacement Property. The Purchase and Sale Agreement shall include such provisions, as Buyer's legal counsel shall determine to accomplish the forgoing. Seller shall not incur any costs or expense in order to accommodate Buyer's Tax Deferred Exchange.

Buyers Initials ( JR )            5 of 11            Sellers Initials( KR FR )

26. OFFER AND TIME FOR ACCEPTANCE: Buyer offers to purchase the Property on the above terms and conditions. If Seller does not accept this offer by: 5:00 [ ]AM [xx]PM Mountain Time on March 26, 2008, this offer shall lapse.

Buyer: Beaver Creek Land & Cattle, LLC or assigns

By: _____ Offer Date: 3/24/08
      Joshua Romney

Its: Manager

        The later of the above Offer Dates shall be referred to as the "Offer Reference Date"

ACCEPTANCE / COUNTEROFFER / REJECTION

**CHECK ONE:**
[ ] ACCEPTANCE OF OFFER TO PURCHASE: Seller Accepts the foregoing offer on the terms and conditions specified above.

[X] COUNTEROFFER: Seller presents for Buyer's Acceptance the terms of Buyer's offer subject to the exceptions or modifications as specified below: (attach another sheet if needed)

_____

_____

_____

_____

_____  Mu 28 2008 _____ 3/28/08  10100 p.m.
(Seller's Signature)      (Date)  (Time)  (Seller's Signature)  (Date)  (Time)

Frank + Karen Robbins
(Seller's Names) (PLEASE PRINT)        (Notice Address)                    (Zip Code)

[ ] REJECTION: Seller rejects the foregoing offer.

_____     _____    _____
(Seller's Signature)        (Date)  (Time)  (Seller's Signature)  (Date)  (Time)

*******************************

**DOCUMENT RECEIPT**

This receipt acknowledges that Buyer and Seller have received a copy of the completed Contract bearing all signatures. (Fill in applicable section below.)

I acknowledge receipt of a final copy of the foregoing Contract bearing all signatures:

_____   3/28/08    _____
(Buyer's Signature)        (Date)      (Buyer's Signature)        (Date)

_____  Mu 28 2008  _____  3/28/08
(Seller's Signature)       (Date)      (Seller's Signature)       (Date)

Buyers Initials ( JR )              7 of 11              Sellers Initials(   )  KR FR

ADDENDUM A
REAL ESTATE PURCHASE CONTRACT - LAND
Seller:  H. Frank Robbins Jr. & Karen P. Robbins and/or assigns
Buyer:  Beaver Creek Land & Cattle LLC
Dated March 24, 2008

i.   This offer is subject to the following:

a.  Buyer's full review and verification of the following:

1.  Total acreage deeded, total acreage in State leases, and BLM
acreage, and that such leases can be transferred upon sale to the
Buyers (see item VI of Addendum);  ~~Purchase price will be
reduced by $669/acre for acreage that is less than the represented
76,268 deeded acres.~~                                          JR
                                                               FR

2.  Review and approval of all easements on or through the
property

3.  Buyer shall have 45 days from acceptance to determine to their
satisfaction that there are no environmental issues resulting in
liabilities that may transfer to the Buyer following closing.  To aid
in facilitating this, Seller is to give full access to the Buyer or their
agents to complete such review.

II.  The Seller may retain possession of their Mill Iron location home until
September 1, 2008. Additionally, they shall be allowed to continue to run
their livestock up to October 15, 2008 at no charge for the pasture and hay
from the ranch's available resources and the Sellers shall have until August
15, 2008 to move equipment, etc. and/or hold a farm sale to dispose of
unwanted personal items or equipment. Additionally, if the Sellers wish to
retain "John" to assist in wrapping up their business, the home occupied by
him shall be available through October 15, 2008.

III.  Sellers are to cooperate with Buyers so that they may move livestock onto
ranch following closing, plus equipment or employees necessary to begin
operation of the ranch.

IV.  Buyer agrees to cooperate with Seller in the event they elect to execute an IRS
Section 1031 tax free exchange to purchase the Montana ranch.  Any
additional costs associated with such are to be borne by the Seller.

V.  Seller is to include with this sale the following:

a.  All fixtures currently on premises, including but not limited to, all
lighting, heating and plumbing fixtures, all outdoor plants, air
conditioning, ventilating fixtures and evaporative coolers, built-in

Buyers Initials (JR)            8 of 11            Sellers Initials( FR )

appliances, permanently attached floor coverings, storm windows and doors, screens, garage door openers and controls, smoke/fire detection devices, curtain and drapery rods, attached TV antennas, TV satellite dish and controls (if owned by Seller), attached mirrors, awnings, water softeners (if owned by Seller), propane tanks (if owned by Seller), heating stove(s) and fireplace inserts, gates, auto gates/cattle guards, irrigation/domestic water systems, and stock tanks.

b. All stacked hay inventory on the ranch as of acceptance of this contract provided that Seller may use hay as normally needed to maintain their livestock up to May 15, 2008.

c. All items, furnishings, equipment, kitchen items, beads, etc. in both lodges except those items considered to be personal in nature. Seller shall remove or create a list of such items within 30 days of acceptance of this contract.

d. All livestock handling equipment, such as chutes, head catches, panels that are part of corrals, ~~roping chute and arena~~, posts poles, wire,    FR
gramaries, etc. that may be on ranch to be used for fence or corral repairs.

e. All items that are currently on the ranch that may be used for the improvement remodels that are currently in progress.

f. Buyer and Seller agree to comply with the Uniform Commercial Code – Bulk Sales Transfer, if applicable.

g. Any items on the ranch of a personal property nature that remain after November 1, 2008 shall revert to the possession of the Buyer unless other written agreements have been made.

VI. The Sellers shall include with this sale the transfer of the US Forest Service allotment, any State Grazing leases held by the ranch, and the Wyoming Outfitting Permit held by the Sellers.

VII.    Income from house rentals shall be prorated based on the date of closing and any deposits held by Sellers transferred to the Buyers.

VIII.    Seller shall at his expense complete all normal and necessary agricultural operations from acceptance of this contract until closing such as hay field preparation, irrigation of crops, first crop hay harvest if necessary prior to closing, branding, vaccinating and turn out of cattle. Buyer shall at closing reimburse Seller for the following 2008 crop expenses: 2008 irrigation water fees, actual fertilizer applied, irrigation power costs, spring seed expenses, and any other projects such as new or repair of any stock water lines or other such

Buyers Initials (JL)                    9 of 11                    Sellers Initials (FR)

projects as agreed to by both parties prior to the commencement of work on
such projects. Seller is to provide invoices for all above expenses and any
bills that come in following closing as part of the above and shall be paid
following presentation to the Buyer. The parties understand that the ranch is
to continue normal operations. However the Seller shall consult with Buyer
as to expenses above $1,000.00.

Buyer: Beaver Creek Land & Cattle, LLC

By: _____
       Joshua Romney, Manager

Seller _____

Seller _____

Witness _____

# Exhibit A:

**Ex.A:** Contract for land sale in *Flathead River Ranch Estates v. Wolf*, 2008 MT 431N.

Exhibit: A

Escrow Number _____

# PURCHASE CONTRACT

Date: July 14, 2003

Buyer: William G. Daggett and/or assigns

Seller: Wolf et al

Property:    Wolf property on Rabe Road, to wit Tract 3 (Lot 11), and Tract 3A (Lot 8, Lot 9, & Lot 10), and Tracts 4A, 4AA, 4AB, 4AC. 5A, 5AA, 5AB, 5AC, (NW ¼) of Section 5 T30N R19W MPM, together with Tract 3 (Lot 7 & Lot 8) in Section 6 T30N R19W MPM, for a total of eleven (11) parcels of land totaling at least 320 acres.

1.  **Purchase and Sale:** Buyer agrees to purchase and Seller agrees to sell the Property on the terms and conditions set forth herein with Sterling Title Services, Inc., a Montana corporation located at 211 South Main Street, Kalispell MT 59903 ("Escrow Agent"), acting as Escrow Agent.
2.  **Purchase Price:** The total purchase price (the "Purchase Price") for the Property shall be $2,250,000 (Two Million Two Hundred Thousand Dollars). Buyer shall have the option a) to pay the full purchase price in cash at the Close of Escrow, or b) to pay cash sufficient to reduce the outstanding balance of the final purchase price to $1,000,000, with the Seller carrying back a note for $1,000,000 at 6% simple interest for a period of five (5) years, with an annual interest only payment to Seller, provided, however, Seller agrees to provide property releases proportionate to the percentage of Purchase Price paid as of the date of request for release. Buyer reserves the right to accelerate payment of part or all of the remaining balance at any time without notice or penalty. All payments of the Purchase Price shall be paid by cashier's check, certified funds, or wire transfer payable to Escrow Agent.
3.  **Earnest Money & Feasibility Period:** Within seven (7) days of the date Seller executes this Purchase Contract, Buyer shall make an earnest money deposit in the sum of $25,000 to the Escrow Company in cash. The Buyer shall have a period of ninety (90) days from the opening of escrow to inspect the property and determine at the Buyers sole discretion the feasibility for the Buyers use of the properties for residential purposes. At the end of the Feasibility period, the Buyer shall deposit an additional $25,000 into the Escrow Account in the form of cash, and the total earnest deposit of $50,000 shall immediately become non-refundable and shall be applied toward the purchase price. The earnest money shall be deposited in (X) an interest bearing account [Seller's Tax ID #_____    _] ( ) a non-interest bearing account at Sterling Title Services, Inc. Funds may be wired to:

> GLACIER BANK, 202 MAIN STREET, KALISPELL MT 59901
> ABA Routing Number: 292970825
> For further credit to: Sterling Title Services, Inc. Escrow Account
> Account # 19970376
> ATTN: Rick Dunlap

At the Close of Escrow, the earnest money shall apply toward the Purchase Price. Interest, if any, earned prior to Close of Escrow shall accrue to Seller, except as may be determined in Paragraph 10.

4.  **Close of Escrow:** The closing (the "Close of Escrow") shall be ninety (90) days following the expiration of the Feasibility Period noted above, after the Buyer has approved the condition of the Property (including Title, zoning, access, fire hazards, flood hazards, railroad rights-of-way, existing easements, environmental and soils conditions, and has obtained all necessary assurances and permits for the property to be developed for residential purposes. Subject to Seller and Buyer agreeing in writing as an Addendum to this Contract, the Buyer shall have the

Buyer's Initials _W.D._                    Page 1 of 6 Pages                    Seller's Initials

right to purchase two (2) additional forty-five (45) day extensions at $25,000 per extension, which money shall be applied toward the purchase price at closing. The Escrow shall open (the "Opening of Escrow") upon Escrow Agent's receipt of this Purchase Contract executed by Buyer and Seller and the initial earnest money set forth above. The Close of Escrow shall occur on the date when the carryback balance is satisfied in full by the Buyer, and the final Deed is recorded.

5. **Receipt of Documents:** By signing below, Buyer acknowledges that Buyer has received, and, by the expiration of the fifteen-day rescission period described at the end of this Purchase Contract, will have an adequate opportunity to and will read and understand the following materials:

A. A copy of this Purchase Contract, unsigned but with all blanks filled in.

B. A Condition of Title Report applicable to the Property (the "Title Report") Promptly after execution of this Purchase Contract by Seller, Seller will instruct Escrow Agent to furnish Buyer a preliminary title commitment together with complete and legible copies of all documents referred to therein.

C. Seller agrees to provide Buyer with a copy of any existing surveys in Seller's possession.

D. Seller agrees to provide Buyer within thirty (30) days following execution of the Purchase Contract a copy of all existing information, reports, and studies concerning the environmental condition of the Property, which may include Phase I study and any correspondence with the Montana Department of Environmental Quality and any other parties regarding any potential soil, groundwater contamination and/or remediation on the Property. Also to be provided are copies of any permits or restrictions issued by, or filed with, any governmental body or office. If no such information, reports, or studies exist or are not in Seller's possession, Seller has no obligation under this section.

*Seller can get Phase I Environment Report Done by College* [handwritten annotation]

6. **Escrow Agent and Escrow:** Escrow Agent is appointed to serve as escrow agent for the purpose of gathering the necessary documents and funds to close the sale. This Purchase Contract constitutes escrow instructions and Escrow Agent agrees to serve as escrow agent by assigning an escrow number to this Purchase Contract.

7. **Delivery of Title and Title Insurance:** Upon Close of Escrow, Seller shall deliver a Special Warranty Deed (the "Deed") conveying the Property to Buyer free and clear of monetary liens and encumbrances, subject only to matters listed in this Paragraph 7. Buyer will take title as ( ) joint tenants with right of survivorship, ( ) Tenants in common, or (x) other ___ (To be specified by Buyer at least ten (10) days prior to closing.) ___ If the form of ownership in which Buyer intends to take title changes after Buyer's execution of this Purchase Contract, Buyer shall notify Seller and Escrow Agent in writing at least ten (10) days before the Close of escrow. Escrow Agent shall record the Deed in the Flathead County clerk and Recorder's Office upon the Close of Escrow, with instructions to mail the recorded Deed to Buyer. Reasonably promptly thereafter, Escrow Agent shall deliver to Buyer an owner's policy of title insurance (the "Title Insurance Policy") in the full amount of the Purchase Price, insuring buyer's title to the Property subject to the printed exceptions, conditions and stipulations set forth in the standard form of such a policy and the following matters: (i) current real estate taxes; (ii) exceptions to title set forth in the Title Report; (iii) any other matters not materially affecting marketability; and (iv) any matters resulting from acts of Buyer. In the event Buyer desires extended ALTA title insurance coverage, Buyer will pay all costs of the extended coverage in excess of the cost of standard coverage.

8. **Closing Costs:** In addition to the Purchase Price set forth above, Buyer agrees to pay customary closing costs. Seller and Buyer agree to split the cost equally of the premium for the Title Insurance Policy. The charges of the Escrow Agent in closing the transaction shall be paid equally by the parties. Real estate taxes attributable to the Property for the year in which the Close of Escrow occurs shall be prorated at the Close of Escrow on the basis of the latest available information.

9. **Entire Agreement:** No sales person, employee or agent of Seller has authority to make any representations to Buyer that are not signed by Seller or to modify the terms of this Purchase Contract or any other written agreement signed by Seller, and Buyer acknowledges that none

Buyer's Initials (WL)         Page 2 of 6 Pages              Seller's Initials (W)

have been made. This purchase contract and any addenda or supplements signed by both of the parties hereto constitutes the entire agreement between Seller and Buyer and supersedes any other written or oral agreements between Seller or Buyer. No amendment or modification of the terms hereof or in any other written agreement shall be binding upon either party unless signed by both of the parties hereto.

10. **Remedies:** If Buyer fails to perform any of the obligations required hereunder as and when due, including the deposit of all necessary documents and funds by the date set for Close of Escrow, Seller may deliver to Buyer and Escrow Agent a written notice to Buyer demanding that Buyer comply with the terms hereof within five business days following Buyer's receipt of the notice. If Buyer has not complied by the end of the allowed period, Seller's obligations hereunder shall automatically terminate. In the event Buyer fails to so comply, Seller may retain all funds paid into escrow by Buyer, together with any accrued interest if any, as liquidated damages as Seller's sole remedy and Escrow Agent is hereby irrevocably instructed to pay the funds to Seller immediately and terminate the escrow. If Seller fails in any manner substantially to comply with the terms and conditions of this Purchase Contract and Buyer has complied therewith, Buyer may deliver to Seller and Escrow Agent (if before Close of Escrow) a written notice to Seller demanding that Seller comply with the terms hereof within five business days from Seller's receipt of the notice. If Seller has not complied by the end of the allowed period, Buyer may: (i) terminate this purchase contract, and in such event Escrow Agent shall refund to Buyer all funds paid into escrow by Buyer, together with any accrued interest, or (ii) seek specific performance by Seller of Seller's obligations under the Purchase Contract, including Seller's obligation to convey title of the Property to Buyer, or (iii) pursue other remedies available at law.

11. **Offer Only:** Execution of this Purchase Contract by Buyer alone constitutes only an offer to purchase. This Purchase Contract shall not be binding upon Seller until approved and accepted by Seller, as indicated by Seller's execution of this Purchase Contract. ACCEPTANCE OR APPROVAL OF THIS PURCHASE CONTRACT BY A SALES REPRESENTATIVE AND/OR DESIGNATED BROKER SHALL NOT CONSTITUTE THE APPROVAL AND ACCEPTANCE HEREOF BY SELLER.

12. **Notices:** All notices or other communications required or provided to be sent by any party hereunder shall be in writing and shall be deemed to have been given upon personal delivery or deposit in the United States mail, first class, registered or certified mail, return receipt requested, postage prepaid, to the respective parties at the addresses set forth beneath their signatures. Either party may change its address by giving the other party written notice. Notice shall be deemed to have been received upon personal delivery or, if mailed as provided above, three days after deposit in the United States mail. A copy of the receipt for delivery or mailing shall be promptly delivered to Escrow Agent. Notwithstanding the foregoing, notice of revocation given in any manner by Buyer will be effective for notice of revocation of this Purchase contract under the Interstate Land Sales full Disclosure Act.

13. **Hold Harmless:** Buyer and Seller agree to hold Escrow Agent and Financial Institution harmless from any costs, damages or attorneys' fees which they may reasonably incur in connection with this Purchase contract, or in any interpleader action arising from this Purchase Contract, except arising from Escrow Agent's or Financial institution's negligence or willful or intentional acts.

14. **Time and Inurement:** Time is of the essence of this Purchase Contract. this Purchase Contract shall be binding upon and inure to the benefit of Seller and Buyer and their respective heirs, executors, administrators, successors and assigns.

15. **Further Documents and Survival of Provision:** Buyer and Seller herby agree to promptly perform all acts and complete, execute and deliver all documents necessary or appropriate in order to complete the purchase contemplated hereunder and in order to meet all requirements incident to the purchase provided for herein or the issuance of the Title Insurance Policy to Buyer. If there is any conflict between the provisions of this Purchase Contract and any escrow

Buyer's Initials                    Page 3 of 6 Pages                    Seller's Initials

instructions entered into by the parties pursuant hereto, the provisions of this Purchase Contract shall control.

16. **Severability:** If any term, condition or provision of this Purchase Contract is declared illegal, invalid or unenforceable for any reason, the remaining terms conditions and provisions shall remain in full force and effect and shall in no way be invalidated, impaired or affected thereby.

17. **No Waiver:** The waiver by the Seller or Buyer of any term, condition or provision of this Purchase Contract shall not be considered as a waiver of any other term, condition or provision of this Purchase Contract. No waiver shall be effective unless made in writing and signed by Seller or buyer as applicable.

18. **Legal Fees and Applicable Law:** If legal action is necessary to enforce any provision of this Purchase Contract, the prevailing party shall be entitled to all costs and reasonable attorneys' fees incurred in that action. This Purchase Contract shall be construed pursuant to the laws of the State of Montana. In the event of a dispute under this Agreement, the parties consent to jurisdiction in the courts of the State of Montana, and agree that venue shall be in Flathead County, Montana.

19. **Benefit and Binding Effect:** Upon execution by Seller and delivery of a fully executed copy hereof to Escrow Agent, this Purchase Contract shall be binding upon the parties hereto and may be altered, amended or changed only by an instrument in writing signed by the parties hereto

20. **Special Considerations:**

A. Documentation of perpetual access across BNSF railroad right-of-way and railroad crossing shall be provided to Buyer by Seller.

B. Seller shall provide documentation guaranteeing to the Buyer no residual entanglements, such as legal, tax, or otherwise, shall affect the title to the property related to the previous transfer and rescission of the property to the Order of St. Benedict.

C. Seller shall guarantee the Buyer a recorded right of access to and from the property, extending from the land to an existing County Road north of the property.

D. Seller to locate and flag all property corner pins.

E. It is the Buyer's understanding that neither Seller nor any prior owner has entered into any conservation easements affecting any portion of the properties.

F. Seller agrees to improve the access road, including labor, manpower, materials, and equipment. Should Seller fail to perform regarding road improvements to the level indicated below by June 1, 2004, Buyer shall have the right to utilize carryback funds sufficient to fulfill Seller's obligation. The minimum road improvements shall provide for a 24' roadbed, together with necessary culverts, and crushed gravel or other recycled materials for a more suitable base prepared to receive asphalt, with materials, grades, and alignments meeting Flathead County Road Standards. *[handwritten:] This could be escalated at any time to insure Buyers completion of purchase, if necessary.*

G. Buyer shall not encumber property for any reason prior to close.

H. ~~Seller may continue to market the property until earnest monies become non-refundable, but may only accept back-up offers during that period.~~ Buyer to have 1st Right of Refusal in event

I. Seller reserves the right to have Seller's attorney draw up a substitute contract in a different format; however, until such substitute contract is approved by both parties, this Purchase Contract shall remain effective. *[handwritten:] a 2nd contract would occur, with 10 days to notify Seller of Decision*

J. Seller agrees to have Seller's attorney draft language as an Addendum to this Purchase Contract, subject to the agreement of both parties, addressing lot releases, with the understanding such lot releases are to be provided upon written request by Buyer.

21. **Broker:** Seller has been represented in selling the Property by Seller's Broker. Buyer has been represented by James Purdy / Jerry Hanson - Jericho Realty ("Buyer's Broker") in purchasing the Property. Seller agrees to pay a brokerage fee sufficient to ensure the Buyers Broker receiving 3%, in the event and only in the event the purchase and sale contemplated by this Purchase Contract actually closes. Seller authorizes Escrow Agent to pay the brokerage fee in cash at Close of Escrow. Seller and Buyer agree that Seller's Broker and Buyer's Broker acted strictly as each's *[handwritten:] Seller agrees to pay a 4% total Sale Commission, Split equally between Buyer + Sellers Broker*

*[handwritten left margin:] 2%  2%*

Buyer's Initials ____        Page 4 of 6 Pages        Seller's Initials ____

*[handwritten:] X Sellers Broker*
*[handwritten:] X Buyers Broker*

agent, and Seller and Buyer are not responsible for any representations or statement of the brokers that are inconsistent with those set forth herein. Seller warrants that no real estate broker or other person other than Seller's Broker represented Seller and Buyer warrants that no other real estate broker or other person other than Buyer's Broker represented Buyer. Seller and Buyer shall indemnify, defend, and hold the other harmless from any and all loss and liability, including costs and reasonable attorneys' fees resulting from or arising out of any misrepresentation or breach of the foregoing representations and warranties. The foregoing representations and warranties shall survive the closing of the transaction which is the subject of this Purchase Contract and the delivery of the Deed.

22. **Affidavit of Value:** Buyer hereby authorizes Escrow Agent to execute, as agent for Buyer, the Realty Transfer Certificate form reflecting the purchase price set forth herein, as required pursuant to Montana law. Escrow Agent shall file the Realty Transfer Certificate when the Deed is recorded.

23. **Return of Documents:** If Buyer elects to terminate or cancel this Purchase Contract, Buyer agrees to return promptly all documents delivered to Buyer by Seller in connection with this Purchase Contract.

24. **Authority:** Each person signing this Purchase Contract warrants that he has the capacity, full power and authority to execute this Purchase Contract and consummate the transaction contemplated hereby on his own behalf or on behalf of the party he represents, as appropriate.

25. **Construction:** The language of this Purchase Contract shall be construed according to its fair meaning and not strictly for or against either party. Words used in the masculine, feminine or neuter shall apply to either gender or the neuter, as appropriate. All singular and plural words shall be interpreted to refer to the number consistent with the circumstances and context

26. **Assignment:** Seller agrees that Buyer may assign this Purchase Contract to a Partnership, Limited Liability Company, or other entity associated with Buyer.

27. **Seller's Specific Representations and Warranties to Buyer:** Seller represents and warrants to Buyer:

   A. The Property is free and clear of any and all deeds to secure debt, liens, mechanic liens, et cetera, whether or not of record.

   B. No work has been performed on the Property, or in connection therewith, that has not been paid for by Seller.

   C. The Property is free and clear of hazardous materials and gas, and to Seller's knowledge the Property has not been used as a landfill or disposal of hazardous substances.

   D. That to the best of his knowledge, nothing detrimental or prohibitive would preclude the Buyer from developing the property for residential uses.

The foregoing representations and warranties shall survive the closing of the transaction which is the subject of this Purchase Contract, and the delivery of the Deed.

**REPRESENTATIONS:** THE ONLY REPRESENTATIONS BY SELLER, ITS EMPLOYEES, OR AGENTS, ARE AS SET FORTH HEREIN. BUYER ACKNOWLEDGES THAT NO OTHER REPRESENTATIONS HAVE BEEN MADE TO OR RELIED UPON BY BUYER.

**RESCISSION DISCLOSURE:** THE BUYER HAS THE OPTION TO CANCEL THIS PURCHASE CONTRACT OR AGREEMENT OF SALE BY NOTICE TO THE SELLER UNTIL MIDNIGHT OF THE FIFTEENTH (15) DAY FOLLOWING THE SIGNING OF THE CONTRACT OR AGREEMENT BY BOTH PARTIES.

Seller shall have until _____ _M July ___ , 2003 to respond, or this offer shall become null and void.

Buyer's Initials _____        Page 5 of 6 Pages        Seller's Initials _____

BUYER: _____ Date: July 14, 2003
                William C. Daggett

Address:  5525 E. Lincoln Drive, Home 121
           Paradise Valley, Arizona 85253

Home Phone: [480] 951-0288     Business Phone: [480] 922-3266  FAX: [480] 951-8673

SELLER _____ Date _____    _____
              Wolf, et al

Address: _____

Telephone: 303/215-9995 H. FAX 303-215-9996

**BROKER REVIEW:**   Seller's Broker acknowledges by initialing below, that he or his
representative has notified Buyer of Seller's acceptance of this Purchase Contract.

                             Broker's Initials _____ Date: _____ . _____

Accepted as Escrow Instructions·     Date: _____

Buyer's Initials _____          Page 6 of 6 Pages          Seller's Initials _____